Good morning, Your Honors, and may it please the Court. My name is Mark Poe, and I had the pleasure of trying this case below, and of course now represent Mr. Barranco, the appellant here. I intend to reserve about three minutes, and I will keep my eye on the clock. So I, of course, want to address any issues that Your Honors may have spotted from the briefing, but for my part, I want to cover two things. First, I want to show how the district court's exclusion of the prior arbitration award between these parties, and then its exclusion of 3D Systems CEO's statements about the contemplated value of the transaction were evidentiary errors. And then, of course, if we satisfy you that those are evidentiary errors, then the burden would shift to 3D Systems to prove that those errors were harmless. Second, if there's time, I want to address the far easier question in this case, which is whether it's permissible for a federal court sitting in equity to award monetary liability against a party on a common law claim, where there is no dispute that the funds that the court orders disgorged have already been dissipated and are no longer in that party's possession. So to start with the excluded evidence, of course, I'm sure Your Honors are familiar with the standard from Obrey v. Johnson, but it's the same standard that applies in criminal cases. If you find an evidentiary error that's material to the case in the language of Obrey v. Johnson, we must reverse, unless it is more probable than not, that the error did not materially affect the result. Which one are you going to start with? The arbitrator's award? You know, I think, actually, the more important one, probably, to the jury's verdict are the CEO's statements. Okay. So as to that, my question to you is, I read the record as indicating that he, I guess it was you, only argued that that testimony was relevant to the issue of damages. And of course, that's irrelevant now, given how the jury came out. So is there a place in the record where you told the judge that, hey, this testimony is critical to our case on liability? Because I did not find that. Well, so I would say two things. First of all, we made that argument in response to 3D Systems' motion in Lemonade No. 4, where it was contending that any reference to, it comes out in the record as either $5  And so that's the argument that we were making at the time. And to answer your Honor's question, no, during the trial, we did not recite what the District Court had previously found in the summary judgment order, that those statements by the CEO would make it more likely that there had been a commitment to invest resources. But I think the, procedurally, the issue is to ask, first, whether or not that was an evidentiary error at all. The evidentiary error being to exclude that reference as a measure of damages within the contemplation of the parties at the time. Because of course, when we were making that argument, we don't yet have the jury's verdict. And so we can't, you know, I suppose rhetorically, we could argue to the District Court that, well, this might be important to the jury's findings as to whether or not there was a commitment to invest resources. But that's not actually an admissibility argument. Well, if the judge was thinking, I can't remember who the judge was here. Judge Kobayashi. If the judge was thinking that this is only relevant to damages, then allowing your client to give his version of the facts, because I think that's what ended up happening, right? Your client was basically allowed to testify, I can't remember the specifics, it's been a little while. But he got in some version of the story. And what you're arguing to us now is that, no, no, no, what was critical is that the jury hear that, you know, it was the other guy who was basically saying, here's how we're going to get to that number. That's what makes it more likely that the promise was made. And I completely agree that that is, that certainly would be relevant to that issue. But I, as I said, when I read the record, it looked like all that you were telling the judge is that we need this evidence admitted as to damages. And I think the judge kind of sensibly in my view said, well, no, that's not really that important to damages because your guy is going to be able to say X, Y, and Z. And that's really what's most important for the jury to hear on that issue. If the judge was never alerted that, but there's this other reason we really need to get this evidence in, Your Honor, then I guess I'm sort of hesitant to say that the judge abused her discretion by not, by keeping it out when you didn't alert her to this much more important aspect of the case that it was relevant to. And perhaps I've already said it, but that I think is the, is the rationale. But when we're looking for whether or not there was a precise evidentiary error, it is the amount of the value of the transaction that was within the contemplation of the parties. And I think it's, it seems like Your Honor has already perceived this, but the, it's a very different thing for a plaintiff to come up and say, I valued the transaction at $5 million, even though he wasn't allowed to use the words $5 million, because it's self-serving. I mean, from the jury's perspective, if he comes up and says, I valued it at $2 million or I valued this at $20 million, what's the jury going to do with that as far as thinking about, well, is this really considered a valuable transaction that would necessitate the investment of resources? If you have, and of course we cited the Seventh Circuit case, Al-Yadavi National Railroad, for a, you know, a point that is intuitive, everyone would know. But credibility based on attribution to the other party is far more persuasive than Mr. Barranco getting up and saying, yeah, it was worth $5 million. And so I, I, I think that that, again, it comes down to precisely what the evidentiary error is, in my mind, as opposed to the rationale. I, I would further say that I hesitate slightly to make excuses. We were not counsel at the time of the summary judgment. We came in only, I think it was maybe three months before trial. I, I, I certainly wish that I had at the time reminded the district court of what it itself had recognized. And it's, the rationale, of course, is impeccable that, that testimony from the CEO would, would support Mr. Barranco's contention that, of course, contract is a matter of intent between the parties, and that this manifests an intent from the other side to match Mr. Barranco's intent. And that would, anyway, support his claim. So on that, I could move to another issue, or, yes. Let me just be sure, Howard, to evaluate this. Are we not, even though you say the, the reason you wanted it in had less to do with damages than the perception of whether there really was an agreement, how this was going to build up and the like, we still look at whether this is an end harmless error, right? That's right. So that, that's really what we're stuck with, is at the end of the day, it didn't come in. We get your point as to why you think it should have come in, but if we think it's harmless, it's harmless. That's right. If, if 3D systems satisfies you that it's harmless, it should be deemed harmless. I would say, though, we have, of course, the verdict form in the record. It's an ER 72. And we see that the jury stopped on the question of whether 3D systems had made a commitment to invest substantial resources. And so that was really the, the crux of the, of the claim, of the outcome of the case. And based on the district court's rationale, which, as I say, no one can really dispute, that is a very important part of the jury in a, again, it's a non, it's, it's not an integrated contract. And so the parties were free to present to the jury, well, here's what was supposed to be in it, here's what we had intended. And so I think when, when the outcome of the case turns on precisely that question, I think it is harmful. Let me, let me ask you one thing, it's, it's not what you talked about, but it's related to the jury. Arguendo, if, if the district court did not have the right to provide an equitable accounting, would you have a right to have the jury determine what the appropriate damages were, you know, determine liability, but would this be something that would go back to the jury, or would this be something that the judge would decide as a matter of law? It would not go back to the jury. I think, I wish I had the pin site right here, but 3D Systems acknowledged to Judge Kobayashi on that counterclaim that it had no evidence of damages. And so there's, there's no sense in which it would go back to the jury. On that point, I, you know, I want to attract the court's attention to the specific language, the contractual language by which the equitable accounting proceeded. This is in the PSA, it's an ER-338. Well, I, I know exactly what you're referring to. I, I guess what I'm troubled with is this, um, um, contracts can say whatever they want about the jurisdiction of a court, but that doesn't mean they get it. For example, in the typical, uh, non-competition, uh, portion of a contract, where you don't want somebody to go to another company. Well, that's where equity really does play a role, uh, and that's why it's almost always said, you know, the parties agree that damages are inadequate, and therefore, we have equitable jurisdiction. But if you had a debt collection action, just plain debt collection, and, uh, the parties said, uh, you know, we hereby convert equitable jurisdiction on the court to do an equitable accounting, and no jury will be involved, and no court's going to decide this other than inequity, would that be valid? No. No, parties cannot contract for equitable jurisdiction of federal courts. Now, what do we do with the Dairy Queen case? How do, how do you have, you have a very simple accounting here, very simple, a child could do it. Yes. And yet, uh, the, the judge ended up making an equitable accounting. Um, it, that was completely improper. We cited at the time the Dairy Queen case to say that an equitable account, an accounting at all, can only be taken out of the jury's hands when the, um, uh, offsetting accounts are so complicated that it couldn't feasibly be presented to a jury. Um. And that doesn't, and that's notwithstanding whatever the contract says, right? That is not, Dairy Queen controls regardless of what the contract says. So no, the, um, and of course, I know you saw in our briefs, but especially after the court found that Mr. Baranca's breach did not cause any harm at all to 3D Systems, and that his, um, breach was not either a but-for or proximate cause for his receipt of those funds in the first place, um, when 3D Systems had admitted, of course, no damages, um, at that point, the, the court is just freewheeling and adding up and slicing and dicing 50 percent of this, 90 percent of that, 90 percent of that, and ordering it, um, reinstated. Now, I, I would, I don't know if there is interest in the prior arbitration award between the parties, but I, I suppose it was well, well spelled out in our briefs. These two parties had entered simultaneous, simultaneously negotiated, uh, transactions for 3D Systems to acquire these two different, uh, businesses that Mr. Baranca was running. They were, the, the contractual terms were slightly different, but they were all on the background of, these are fledgling companies, they will need an investment of substantial resources to flourish, and of course, we showed you in the record, it's at page seven of our opening brief, the various statements that 3D Systems CFO, uh, had made in support of that. And so I . . . Can I ask, just for clarification, what you wanted to get in was not merely the underlying conduct that, um, the defendant engaged in with that, with respect to that other transaction, but you wanted the jury to learn that an arbitrator had made factual findings in your client's favor? Correct. That just strikes me as obviously not proper, and I can't for a second think that I would feel comfortable saying that District Judge abused her discretion in keeping it out. That just strikes me as fine, if, if under 403, you can get into this other transaction without unduly, you know, prolonging the trial, that's one thing. Um, but you can't get in the fact that some other adjudicator looked at the conduct that this person, uh, you know, engaged in another transaction and found against them as, to me, that just strikes me as not proper at all. If, if your Honor wouldn't consider it for one second, then I have a steep hill to climb. Uh, I would . . . Take whatever time you want. Sure. I, I'll finish in, uh, 30 seconds. I would, uh, refer the Court to the Supreme Court case, Alexander v. Gardner, where it says it can be done, uh, the Graf v. Chemical-Lehman case, where it says it can be done. And it was an abuse of discretion on the same 402, 403 grounds to exclude the prior award because the prior award makes it more likely to bolster . . . I looked at those cases. They strike me as completely distinguishable from the, the kind of use, the evidentiary use you wanted to put the arbitrator's findings to, in this case, strikes me as leagues away from, from that. I, I stand with Alexander, Your Honor. Thank you. Good morning, counsel. May it please the Court. My name is Tom Benedict. I represent Defendant 3D Systems. Um . . . Judge Smith, I would like to talk directly to you . . . Okay. . . . because it seems to me that you are concerned about the exercise of equity in this case. Correct. And I would like to describe this case to you in the way that we see it . . . Okay. . . . and, and perhaps we might be talking past each other, but I at least want you to understand why we think what Judge Kobayashi did here was absolutely correct. Okay. I'm listening. As we know, the district courts are civil actions. This was a civil action pursuant to Rule 2 of our Federal Rules of Civil Procedure. Our courts are sitting in both equity and at law at the beginning. They, they have that right when they have an appropriate case. That's correct. That's right. In addition to that, in this case, the parties, Mr. Barranco, filed a complaint seeking both inherent power of the court to award equity. In addition to that, this case was venued in Hawaii, and the court was applying the substantive law of Hawaii. In addition to all of that, the contract itself provided that there would be this equitable remedy. And I'm just going to jump ahead and tell you I agree with you that the parties cannot contract to have jurisdiction through a contract. I agree with that. What I do not agree with, however, is that the rights that a party, that parties agree to in a contract have no bearing on what the court does when it finds a breach, when a jury determines there's been a breach. By contract, it was agreed that in that event, there would be a specific performance of an equitable accounting. Specific performance? It was, it was phrased in the context, if you read it, it says specific performance including but not limited to equitable accounting. So basically, the paragraph 6F of the PSA talked about this particular form of remedy, of relief. In addition, paragraph 6G talked about, we also maintain our right, this is not our exclusive right, we maintain a right to whatever remedies are available at law or in equity. Can I jump in there though, because as I understand it, you started out wanting this accounting, which is an accounting generally of profits. Yes. And here there were none that could be attributed to the wrongdoing. So you did get the judge to basically specifically perform the contract, if you want to call it that. But then when it turned out, or you realized that boy, that's not going to yield us anything, you shifted to an alternative sort of mode of recovery, which was to get back some of the consideration you had paid. And I understand that form of relief to have nothing to do with equity. It's just a, it's actually, you know, an alternative measure of damages at law. And I guess what I'm troubled by is the fact that the judge then, I think over the objection of your opponent, did not agree to submit that issue to the jury. It seemed to me that the Seventh Amendment required, if the plaintiff here invoked that right, to have a jury determine how much of the consideration you were entitled to get back, not to have the judge do it. So can you help me sort through that set of issues? Yes. First of all, Your Honor, from a temporal point of view, the determination to go to the disgorgement theory sort of happened as the case was being submitted to the jury. The jury was asked if there was a breach. The jury was also asked, they were instructed on the elements of breach of contract, they were instructed on the concept of nominal damages, and they found a breach notwithstanding. So, at that point, the court decided to adhere to what the parties had agreed to in the contract and move forward. Mr. Barranco was provided with his right to a jury trial on the contract. And what happened next was how was the remedy going to be effectuated. Right, but I have to, just let me interject. Weren't you required, given that you all were before the jury, to, if you in fact were going to seek this alternative mode of recovery, weren't you required to ask the jury to weigh in on how much of the consideration should be disgorged? No, Your Honor. Why not? Because the Ninth Circuit, and almost every treatise I can find, treats disgorgement as an equitable remedy. Not in this context. That's where I think you're wrong. The few courts that have addressed this specific kind of damages recovery for a breach of contract have said that it's legal. And I think the Foti case, I can't remember if that's one that you rely on, that Vermont Supreme Court case, characterizes it as legal relief. It's not equitable. There's nothing equitable about it. It's just a different mode of recovering damages for an action at law, namely breach of contract. And that's what you brought here. On that point, Your Honor, we'll have to disagree. I'll refer the Court back to its own decision in Commerce Planet, which has been cited by the parties, in which it was stated that restitution is an equitable remedy. And it basically says that the Seventh Amendment is not implicated when one is seeking equitable restitution. I remember that case very well, and it's not on point for your purposes. You are the plaintiff in this aspect of the case. You brought a breach of contract action. You're entitled to recover damages, and an alternative mode of recovery is to return of some of the consideration paid. But that has nothing to do with an equitable relief. It's just a different way of recovering damages at law. At least that's how I read the law. Maybe you're right. Maybe my colleagues will disagree with that. But if that's true, I thought that you did not raise the disgorgement theory until after the jury verdict came back. And you're saying that you had actually put that in play beforehand? Yes. If you look very carefully at the transcript of what happened, which I have done in the last few days, you'll see that in the argument that took place between Mr. Poe and I about the issue of the JMOL on our counterclaim, this issue came up in the context of that. So it was actually raised really in the sausage grinding that was going on at the very end of the trial about what was going to be submitted to the jury. And the specific idea of disgorgement was raised. The Eckerd case was raised before the court. And so that theory was brought before the court as what we were heading for. Well, let me ask you this. I mean, you obviously have your perspective on it, but if the court concludes that there was no equitable jurisdiction over the damages issue, what do we do with this? What do we do with this case? Well, I can tell you what I think Mr. Poe would say, which is just dismiss it. It's done. And I would say what you would do there— To what effect, though? You've got a decision by the judge awarding certain damages in connection with an equitable accounting. If we dismiss it, it means we're just kind of stepping out of it and it stays where it is. But if we find that the court—I'm just saying an arguendo—if we find the court in equity had no right to do what it did, that this is in bottom line, this is a pure legal action to collect a debt, in effect, and that that was improperly done. What do we do with it? Well, if I accept your premise that there was no equitable jurisdiction, then I would suggest that the appropriate remedy, in order to avoid a situation where Mr. Barrancaro profits from a wrong, would be to send the case back for a jury determination of our alternative remedy, as Judge Watford is suggesting, with respect to what happened in this case. How would that work at this point? As I understand it, you said he opposed having to go to the jury. Can you re-impanel a new jury just to decide this alternative theory at this point? That particular procedure is beyond the scope of anything I've ever seen before, Your Honor. I don't know. I don't know what to do under those circumstances. I would just point out that one of the things that I think Mr. Poe's brief very skillfully did was to sort of gloss over the fact that the jury found that Mr. Barrancaro breached his non-compete. Now, remember the non-compete provided that he could not develop or design competing technologies. It didn't require that those technologies had to be monetized. He simply could not do that. And the court indicated there are good reasons for that. He took money from 3D Systems to make that promise of forbearance, and he broke it. And the jury concluded that. And the jury concluded that. I don't argue with that. Okay. So my point is there must be a remedy that starts with the proposition that he breached the non-compete, and from there, something has to happen. Under what the court did here was to look at Hawaii law, and in particular the Porter case, which essentially was a situation where the parties have a contract, but it didn't fully address the conduct that unjustly enriched the other party. And as a result, the court stepped in in equity and said, we're going to remedy that. I'm going to stop you right there, because I want to be sure we're in agreement on this. There is no Hawaii law that controls this case, right? District courts seem to agree with that. No specific... Yes. No specific case or law that says exactly what's supposed to be done here. Yes. We're really talking about federal procedural law, basically, equity, non-equity. And I wrestle with the Dairy Queen case, because the Dairy Queen case says, hey, like, you know, sometimes you can do this, but it's got to be a really complex issue. If you can't really sort this out any other way, then, you know, then the court can do it. This is simplicity itself. This is, as my colleague said, it's basically a debt collection action. If this could happen, you could, almost any district court in our jurisdiction, could take a plain garden variety debt collection action that involved a lot of money and convert it into an equitable accounting. That doesn't make any sense to me. I'm going to have to disagree with you again. No, no. Please do. That's fine. And this actually goes to Judge Watford as well. This is not a debt collection action, and it troubles me that you folks would see it that way. I think, Judge Smith, it's a breach of contract action. That's a better way to say it, yeah.  under contract law. No. I mean, in your favor, I think Hawaii law supports the alternative remedy of saying in the event that there are no traditionally recoverable damages that you would normally be able to get. As an alternative, you as the plaintiff can shift and say, you know what, Your Honor, we just want to get back at least the portion of the consideration that was attributable to the breach of performance. And when? But all I'm saying is that I have not found any cases that say that when you as the plaintiff elect to seek that remedy, that it's under the auspices of equity. It's just an alternative means of recovering damages that law. Your Honor, I would point you to the Porter case. And in the Porter case, the jury decided the unjust enrichment claim. But what happened after was the judge changed what the award was. The judge acted in equity. So that case actually was upheld, and what happened there was upheld, and what happened there was equity. Well, the first thing I would say to you is that the first question I had was whether you could even recover on this disgorgement theory without bringing a separate unjust enrichment claim. I thought that you, under Hawaii law, would have to do that. You did not bring an unjust enrichment claim. You had a single claim, which was for breach of contract. And as I said, that is purely an action at law. I think that in your favor, I think that Hawaii law would support seeking this alternative means of recovery, but it's not in equity. You didn't bring any kind of an unjust enrichment claim that could even arguably be headed under the caption of equity. So I guess I'm still stuck wondering why you didn't essentially forfeit your ability to recover on this alternative theory by not putting it to the jury the first go-round. Because as you said, now having to impanel a new jury just to decide this one question I can't think of any case where that's happened. So I'm just wondering why wasn't it incumbent upon you to say to the judge, you know, Your Honor, we want to pursue this thing in equity that the contract provides, but as a backup, we want the jury to at least give a verdict in case we can't recover on the equitable accounting theory. We want the jury to give us a verdict on alternative measure of damages theory. I think, Your Honor, there are a couple answers to that. The first of which is that the parties believed or we believed that we could rely on the contractual provision that allowed for the specific performance of the equitable accounting. In addition to that, what had happened, and this goes beyond, if you'll just indulge me just a touch so you can understand, during the course of the litigation, we were stymied in our attempts to find out any information about any wrongful profits that Mr. Barranco may have obtained from his non-compete. And so as we got close to this actual verdict, it was our belief that the equitable accounting would allow us to finally look underneath the hood and see what actually happened. We just had not been able to do it before then. Since you're running out of time, let me just interrupt for a second here. Let's just say for a moment, arguendo, that there was no equitable right here and that my colleague is correct, that the correct approach would have been under Hawaiian law to bring an action for unjust enrichment and you didn't do it. What happens at this point? Have you waived it under Hawaiian law? I don't think so. And I'm wrestling with that question and this is sort of something that I've been thinking about this morning. In our jurisprudence, we have had cases, I believe, that have, a party raises unjust enrichment as a count of action. I've seen cases where it's been dismissed because they say that's a remedy, not a cause of action. So there's this ambiguity that exists. Isn't a suit for unjust enrichment merely an alternative theory of recovery? I mean, it's a claim. You could start from the beginning without anything else and claim unjust enrichment. It's a cause of action, right? There are cases where it's been dismissed, which is the problem. Oh, sure. Tax-free. And dismissed on the basis that it's not actually a cause of action. So my point is simply this. It's true. We did not bring an unjust enrichment claim because we believed, again, that we were going to get this through our contract. Did you consider it, by the way? Did you consider whether you should bring an action for unjust enrichment? I don't know the answer to that question, Your Honor. So whatever happened here, you didn't think about it and decide not to do it, right? I simply don't know the answer to that. Okay. I don't know if you were able to finish your answer, but one thing that struck me in what you said is that your first response was, well, we thought that by invoking the equitable accounting provision, that was going to allow us to finally look under the hood, and then we'd find that there was real gold there. But that was an election you made, and it turned out to be the wrong one, arguably, because as the judge found, there wasn't anything to be recovered on that theory. And it just strikes me as, well, you made that choice. You could have obviously taken an alternative tack and said, forget about this equitable accounting thing. We just want to get our money back. And judge, please put on the verdict form a line where the jury can tell us how much we're entitled to. You decided to forego that, it sounds like, because you were thinking about it, and you decided instead to put all your eggs in the equitable accounting basket, and it just turned out that there was no money there. And judge, I can explain that. And that one, I actually was there. I do know the answer to that. I would not ever submit what I believe an equitable claim to a jury. That's improper. And going back to, I know we don't agree here, but I do not believe that the remedy of discouragement for a breach of a non-compete is an equitable, or is a action at law. So it's... Fair. And if you're wrong on that, then would you concede that you made the election and it turned out wrong, and you're not now entitled to have us send it back to a panel, a whole new jury, to decide this one issue of damages? Would you concede that? Not entirely. Okay. Why are you entitled to basically a second bite at the apple if you got the law wrong at that earlier juncture? Because, Your Honor, if you look at the record very closely, you'll see that the jury was instructed about breach of contract, and it was instructed about non-mobile damages, and it decided that there was a breach by Mr. Barranco. But the second half of the problem is what you didn't deal with. And on that particular point, I believe, if one looks closely at the record, we actually asked for a line for nominal damages in the verdict form, and as far as I can tell, it somehow didn't make it there. So... But even there, you just asked for nominal damages. You didn't ask for unjust enrichment. We asked for a line for damages, Your Honor. Basically, just a line for damages, not for unjust enrichment. Oh, I see. Yeah, you're correct. But you said nominal damages. I'm sorry. Under the circumstances of what we had, if, for example, the jury had come back and awarded damages of $500,000 for what the state of the evidence was at that time, I think that on review, the Court would have appropriately removed that particular award, because it just wasn't the evidence in the record at the time. So it seemed where we thought the Court should go was to allow for an award of nominal damages, and then we could proceed from there. Other questions? All right. Thank you for your help on that. We appreciate it. Thank you. I think opposing counsel has a little bit of rebuttal time. Thank you, Your Honor. A couple of quick points. First of all, I stand in solidarity with my friend, Mr. Benedict, on the unjust enrichment issue. He couldn't have won that either. Porter v. Hu refers to disgorging profits that the defendant had made from its breach. And of course, there are none here. And so no one can fault him. Well, the result would have been the same even if he had brought that. But second, then, I have to attack Mr. Benedict. He was talking about equity and the broad expanse of equity. And of course, we cited Grupo v. Mexicano in the 1999 Supreme Court case, or Grupo Mexicano, where the opinion specifically disagreed with the dissent that one can just invoke the grand aims of equity to achieve whatever result the district court or any court sees fit. Third, I want to come back to the exclusion of the CEO's points. And I want to encourage the court to allocate the burden on that issue as the case law says it should be done. We didn't hear Mr. Benedict make any argument for how that was a harmless exclusion. The arguments, and I don't recall them right now, but in the red brief, there are not arguments made that that was actually harmless to the jury's determination of whether there had been a commitment of resources. And so on that, I would encourage the court to follow Obrey, the presumption of prejudice, and less rebutted by the party that benefited from it. Your time is up, and I know you stand in solidarity with your co-counsel there. But do you have any other pearls of wisdom you would briefly like to share with us? Yes. I have 30 seconds of wisdom. I don't have any of them left. You're in the negative territory. The trapdoor is opening, so be careful. Yes, sir. On the nature of the remand, because Your Honor asked, the $2.2 million judgment that Mr. Branco owes to 3D Systems has been fully satisfied. And I know Mr. Benedict will agree with me on that. Because of the arbitration? Correct. It was an offset. And so that money, including the $831,000, is in possession of 3D Systems.   If the court were to order a new trial, it would be in possession of 3D Systems. entire judgment, the district court should be instructed in the mandate to return that entire $2.1 million judgment to us, because there's no longer any prevailing party for the attorney's fees. Even if a new trial is not ordered, Your Honors, the mandate should direct that the $831,000 be returned to Mr. Branco with interest at the same Hawaii State rate that the district court had applied when it was against us. I say it only with a modicum of trepidation, because Mr. Branco had it hard before this district judge, and I think it would be best to have a clear mandate on either of those issues. I hope you two can have a nice lunch together. Perhaps. Okay. Thank you both for your arguments. Very helpful on this very interesting case. We thank you for your argument. The case just argued is submitted.
judges: Graber, M. Smith, Watford